**<u>Exhibit A</u>**

**Modified Plan**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| NORTHWEST BANCORPORATION OF ILLINOIS, INC.,[1] | ) | Case No. 15-15245 (CAD) |
| | ) | |
| Debtor. | ) | |
| | ) | |

**DEBTOR'S PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION**
**(WITH TECHNICAL MODIFICATIONS)**

James H.M. Sprayregen, P.C.
David R. Seligman, P.C.
Brad Weiland
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

*Proposed Counsel to the Debtor and Debtor in Possession*

Dated: May 19, 2015

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number is:  Northwest Bancorporation of Illinois, Inc. (0422).  The location of the Debtor's corporate headquarters and the service address for the Debtor is:  300 East Northwest Highway, Palatine, Illinois  60067.

**TABLE OF CONTENTS**

DEBTOR'S PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION (WITH TECHNICAL
    MODIFICATIONS)..................................................................................................................... I

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND
    GOVERNING LAW .............................................................................................................1
    A.    Defined Terms. ..........................................................................................................1
    B.    Rules of Interpretation. ............................................................................................13
    C.    Computation of Time. .............................................................................................14
    D.    Governing Law. .......................................................................................................14
    E.    Reference to Monetary Figures. ..............................................................................14

ARTICLE II. ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS...............................14
    A.    General Administrative Claims. ..............................................................................14
    B.    Professional Compensation. ....................................................................................15
    C.    Post-Confirmation Date Fees and Expenses. ..........................................................16
    D.    Priority Tax Claims. ................................................................................................16
    E.    Statutory Fees. .........................................................................................................16

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................16
    A.    Classification of Claims and Interests. ...................................................................16
    B.    Treatment of Claims and Interests. .........................................................................17
    C.    Special Provision Governing Unimpaired Claims. .................................................20
    D.    Acceptance or Rejection of the Plan. ......................................................................20
    E.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ................20
    F.    Controversy Concerning Impairment. .....................................................................20
    G.    Elimination of Vacant Classes. ...............................................................................20
    H.    Subordinated Claims. ..............................................................................................20

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...............................................21
    A.    General Settlement of Claims and Interests. ...........................................................21
    B.    Sources of Consideration for Plan Distributions. ...................................................21
    C.    Restructuring Transactions. .....................................................................................22
    D.    Sale Transaction. .....................................................................................................23
    E.    TruPS Amendments. ...............................................................................................23
    F.    TruPS Election. .......................................................................................................24
    G.    Corporate Existence. ...............................................................................................24
    H.    Vesting of Assets in the Reorganized Debtor. ........................................................24
    I.    Cancellation of Securities and Agreements. ...........................................................25
    J.    Corporate Action. ....................................................................................................25
    K.    Directors, Managers, and Officers of the Reorganized Debtor. ..............................25
    L.    Effectuating Documents; Further Transactions. ......................................................26
    M.    Cooperation Regarding Regulatory Matters. ..........................................................26
    N.    Non-Payment of Certain Fees and Expenses. .........................................................26
    O.    Section 1146 Exemption. .........................................................................................26
    P.    Employee and Retiree Benefits. ..............................................................................26
    Q.    Preservation of Causes of Action. ...........................................................................27

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............27
    A.    Assumption of Executory Contracts and Unexpired Leases. ..................................27
    B.    Cure of Defaults for Executory Contracts and Unexpired Leases Assumed..................27
    C.    Modifications, Amendments, Supplements, Restatements, or Other Agreements......................28
    D.    Reservation of Rights. .............................................................................................28
    E.    Nonoccurrence of Effective Date. ...........................................................................28

i

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS .........................................................28
    A.    Timing and Calculation of Amounts to Be Distributed. ...................................28
    B.    Distributions on Account of TruPS Claims............................................................29
    C.    Distributions on Account of Claims Allowed After the Effective Date.................29
    D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions.............30
    E.    Manner of Payment.................................................................................................30
    F.    Compliance with Tax Requirements. ......................................................................30
    G.    Allocations. ............................................................................................................31
    H.    No Postpetition Interest on Claims. ........................................................................31
    I.    Setoffs and Recoupment by Debtor. ......................................................................31
    J.    Claims Paid or Payable by Third Parties................................................................31

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND
        DISPUTED CLAIMS ..........................................................................................32
    A.    Resolution of Disputed Claims. ..............................................................................32
    B.    Disallowance of Claims. ........................................................................................33
    C.    Amendments to Claims. ..........................................................................................33

ARTICLE VIII. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS ............33
    A.    Discharge of Claims and Termination of Interests; Compromise and Settlement of
        Claims, Interests, and Controversies. .....................................................................33
    B.    Subordinated Claims. ..............................................................................................34
    **C.**    **Releases by the Debtor.**..........................................................................................34
    **D.**    **Releases by Holders of Claims and Interests.** ...................................................34
    **E.**    **Exculpation.**........................................................................................................35
    **F.**    **Injunction.**..........................................................................................................35
    **G.**    **Waiver of Statutory Limitations on Releases.** ................................................36
    H.    Setoffs. ....................................................................................................................36
    I.    Special Provision Governing Accrued Professional Compensation Claims and Final Fee
        Applications.............................................................................................................36
    J.    Protections Against Discriminatory Treatment. .....................................................36
    K.    Document Retention. ..............................................................................................37

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN...........................37
    A.    Conditions Precedent to the Effective Date. ..........................................................37
    B.    Waiver of Conditions. ............................................................................................38
    C.    Effect of Failure of Conditions. .............................................................................38

ARTICLE X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................38
    A.    Modification and Amendments. ..............................................................................38
    B.    Effect of Confirmation on Modifications. ..............................................................38
    C.    Revocation or Withdrawal of Plan. ........................................................................38

ARTICLE XI. RETENTION OF JURISDICTION ......................................................................................39

ARTICLE XII. MISCELLANEOUS PROVISIONS ...................................................................................40
    A.    Immediate Binding Effect. ......................................................................................40
    B.    Additional Documents. ...........................................................................................40
    C.    Dissolution of Creditors' Committee and Cessation of Fee and Expense Payment.......................41
    D.    Certain Governmental Matters. ..............................................................................41
    E.    Reservation of Rights..............................................................................................41
    F.    Successors and Assigns...........................................................................................41
    G.    Notices. ...................................................................................................................41
    H.    Term of Injunctions or Stays...................................................................................42
    I.    Entire Agreement. ...................................................................................................42
    J.    Exhibits. ..................................................................................................................42

KE 35583166

K.      Nonseverability of Plan Provisions. ............................................................................42
L.      Votes Solicited in Good Faith. ....................................................................................42
M.      Closing of Chapter 11 Case..........................................................................................43
N.      Conflicts. ......................................................................................................................43

KE 35583166

## INTRODUCTION

Northwest Bancorporation of Illinois, Inc. as debtor and debtor in possession (the "Debtor") proposes this Plan for the resolution of the outstanding Claims against and Interests in the Debtor pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in Article I.A hereof.  Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtor's history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan and certain related matters.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

All Holders of Claims entitled to vote to accept or reject the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.     *Defined Terms.*

As used in this Plan, capitalized terms have the meanings set forth below.

1.     "*Accrued Professional Compensation Claims*" means, at any given time, all Claims for accrued, contingent, and/or unpaid fees and expenses rendered allowable before the Effective Date by any retained Professional in the Chapter 11 Case that the Bankruptcy Court has not denied by Final Order; provided that any such fees and expenses (a) have not been previously paid (regardless of whether a fee application has been Filed for any such amount) and (b) have not been applied against any retainer that has been provided to such Professional.  To the extent that the Bankruptcy Court or any higher court of competent jurisdiction denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation Claims.

2.     "*Administrative Claim*" means any Claim for costs and expenses of administration pursuant to sections 328, 330, 364(c)(1), 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtor (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises); (b) Allowed Accrued Professional Compensation Claims; and  (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code.

3.     "*Adverse Action*" has the meaning set forth in Article IV.D.

4.     "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

5.     "*Allowed*" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim for which the applicable deadline for parties in interest to object to such Claim has passed with no such objection having been filed; (b) a Claim that is allowed (i) pursuant to the terms of the Plan or (ii) in any stipulation that is approved by the Bankruptcy Court by a Final Order; (c) a Claim that has been allowed by a Final Order.

6.     "*Amended Capital Securities*" means the Capital Securities as amended by the Electing TruPS Amendments and Non-Electing TruPS Amendments, as applicable, on and after the Effective Date.

7.     "*Amended Common Securities*" means the Common Securities as amended by the Electing TruPS Amendments and Non-Electing TruPS Amendments, as applicable, on and after the Effective Date.

8.      "*Amended Debentures*" means the Debentures as amended by the Electing TruPS Amendments and Non-Electing TruPS Amendments, as applicable, on and after the Effective Date.

9.      "*Amended TruPS*" means the Junior Amended TruPS and/or the Senior Amended TruPS, as applicable.

10.      "*Amended TruPS Indentures*" means those TruPS Indentures (if any) as amended by the Electing TruPS Amendments and Non-Electing TruPS Amendments, as applicable, on and after the Effective Date.

11.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as may be amended from time to time.

12.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Illinois or any other court having jurisdiction over the Chapter 11 Case.

13.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

14.      "*BONY*" means The Bank of New York.

15.      "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

16.      "*Capital Securities*" means, collectively:  (a) the Capital Trust I Capital Securities; (b) the Capital Trust II Capital Securities; and (c) the Statutory Trust I Capital Securities.

17.      "*Capital Trust I*" means Hershenhorn Capital Trust I, a statutory business trust, formed under Delaware law pursuant to the Capital Trust I Declaration, established for the sole purpose of issuing securities representing undivided beneficial interests in Capital Trust I's assets.

18.      "*Capital Trust I Capital Securities*" means the 17,000 capital securities of Capital Trust I with an aggregate liquidation face amount of $17,000,000 issued pursuant the Capital Trust I Declaration.

19.      "*Capital Trust I Common Securities*" means the 526 common securities of Capital Trust I with an aggregate liquidation face amount of $526,000 issued pursuant to the Capital Trust I Declaration.

20.      "*Capital Trust I Declaration*" means that certain Amended and Restated Declaration of Trust (as amended, modified, or supplemented from time to time), dated as of July 16, 2001, among C. Richard Schuler, Alexis Hershenhorn and Robert Hershenhorn, as Administrators, The ·Bank of New York (Delaware), as Delaware Trustee, BONY, as Institutional Trustee, Hershenhorn Bancorporation, Inc., as Sponsor, and the holders from time to time of undivided beneficial interests in the assets of the Trust, including the designation of the terms of the Capital Securities as set forth in Annex I thereto.

21.      "*Capital Trust I Junior Subordinated Debentures*" means the $17,526,000 in principal face amount of the Debtor's 10.25% Junior Subordinated Deferrable Interest Debentures due July 25, 2031.

22.      "*Capital Trust II*" means Hershenhorn Capital Trust II, a statutory business trust, formed under Delaware law pursuant to the Capital Trust II Declaration, established for the sole purpose of issuing securities representing undivided beneficial interests in Capital Trust I's assets.

23.      "*Capital Trust II Capital Securities*" means the 6,000 capital securities of Capital Trust II with an aggregate liquidation face amount of $6,000,000 issued pursuant to the Capital Trust II Declaration.

24.      "*Capital Trust II Common Securities*" means the 186 common securities of Capital Trust II with an aggregate liquidation face amount of $186,000 issued pursuant the Capital Trust II Declaration.

2

25. "*Capital Trust II Declaration*" that certain Amended and Restated Declaration of Trust (as amended, modified, or supplemented from time to time), dated as of July 16, 2001, among C. Richard Schuler, Alexis Hershenhorn and Robert Hershenhorn, as Administrators, BONY (Delaware), as Delaware Trustee, BONY, as Institutional Trustee, Hershenhorn Bancorporation, Inc., as Sponsor, and the holders from time to time of undivided beneficial interests in the assets of the Trust, including the designation of the terms of the Capital Securities as set forth in Annex I thereto.

26. "*Capital Trust II Junior Subordinated Debentures*" means the $6,186,000 in principal face amount of the Floating Rate Junior Subordinated Deferrable Interest Debentures due July 25, 2031.

27. "*Cash*" means cash and cash equivalents.

28. "*Causes of Action*" means any: (a) Claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises; (b) all rights of setoff, counterclaim, or recoupment and Claims on contracts or for breaches of duties imposed by law; (c) rights to object to Claims or Interests; (d) Claims pursuant to sections 362, 510, 542, 543, 544, 545, 546, 547, 548, 549, 550, or 553 of the Bankruptcy Code; and (e) Claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, whether arising before, on, or after the Petition Date including through the Effective Date, in contract, in tort, in law, or in equity, or pursuant to any other theory of law.

29. "*Certificate*" means any instrument evidencing a Claim or an Interest.

30. "*Chapter 11 Case*" means the case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, which is administered in the Bankruptcy Court under case number 15-15245.

31. "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor.

32. "*Claims Bar Date*" means the deadline for filing Proofs of Claim, as set forth in a separate Final Order of the Bankruptcy Court.

33. "*Claims Objection Deadline*" means the date that is six (6) months after the Effective Date.

34. "*Class*" means a class of Claims or Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

35. "*CM/ECF*" means the Bankruptcy Court's Case Management and Electronic Case Filing system.

36. "*Common Securities*" means, collectively: (a) the Capital Trust I Common Securities; (b) the Capital Trust II Common Securities; and (c) the Statutory Trust I Common Securities.

37. "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to all conditions specified in **Error! Reference source not found.** hereof having been (a) satisfied or (b) waived pursuant to Article IX.B hereof.

38. "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

39. "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court on Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

40. "*Confirmation Order*" means an order of the Bankruptcy Court in form and substance acceptable to the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

41. "*Consummation*" means the occurrence of the Effective Date.

42. "*Creditors' Committee*" means an official committee of unsecured creditors, if any, appointed in the Chapter 11 Case by the U.S. Trustee.

43. "*Cure*" means the payment of Cash by the Debtor or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to cure defaults under an Executory Contract or Unexpired Lease of the Debtor that permits the Debtor to assume such Executory Contract or Unexpired Lease under section 365(a) of the Bankruptcy Code.

44. "*Cure Claim*" means a Claim based upon the Debtor's defaults on an Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtor pursuant to section 365 of the Bankruptcy Code.

45. "*Debtor Release*" means the release given by the Debtor to the Released Parties as set forth in Article VIII.C.

46. "*Disclosure Statement*" means the *Disclosure Statement for the Debtor's Prepackaged Chapter 11 Plan of Reorganization* (as may be altered, amended, modified, or supplemented from time to time), including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law.

47. "*Disputed*" means any Claim or Interest that is not yet Allowed.

48. "*Distribution Record Date*" means the date the Confirmation Order is entered on the Bankruptcy Court's docket.

49. "*Effective Date*" means the date selected by the Debtor that is at least one (1) Business Day after the Confirmation Date on which:  (a) the conditions to the occurrence of the Effective Date have been met or waived pursuant to Article IX.A and Article IX.B hereof and (b) no stay of the Confirmation Order is in effect.

50. "*Effective Date Excess Amount*" has the meaning set forth in Article IV.B.2.

51. "*Effective Date Funding Amount*" has the meaning set forth in Article IV.B.1.

52. "*Electing TruPS Amendments*" means those certain amendments to the Trust Junior Subordinated Debentures, Capital Securities, and Common Securities held by Electing TruPS Holders and the related TruPS Documents, pursuant to which, on the Effective Date:

    a. the liquidation face amount of all Capital Securities held by Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $10,700,000.00 in the aggregate <u>unless</u> all Holders of TruPS Claims make the TruPS Election, in which case the liquidation face amount of all Capital Securities shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $11,500,000.00 in the aggregate;

    b. the principal face amount of all Common Securities issued by those Trusts that have issued Capital Securities to the Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $331,200.83 in the aggregate <u>unless</u> all Holders of TruPS Claims make the

4

TruPS Election, in which case the principal face amount of all Common Securities shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $356,118.58 in the aggregate;

c.  the principal face amount of all Trust Junior Subordinated Debentures held by the Trusts for the benefit of the Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $11,031,200.83 in the aggregate <u>unless</u> all Holders of TruPS Claims make the TruPS Election, in which case the principal face amount of all Trust Junior Subordinated Debentures shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Electing TruPS Holders) to $11,856,118.58 in the aggregate;

d.  the Reorganized Debtor shall have the right to extend the deferral of all interest payments under the Junior Amended TruPS, in the manner set forth in the governing documents of the Amended TruPS, until the earlier of (i) four (4) years after the Effective Date (which is approximately nine (9) years after the last deferral period began) or (ii) one (1) year after that certain written agreement, dated as of May 31, 2011, between the Federal Reserve Bank of Chicago and the Debtor has been terminated or lifted.

e.  if the Holders of TruPS Claims under the Capital Trust I Junior Subordinated Debentures, the Capital Trust I Capital Securities, and the Capital Trust I Common Securities become Electing TruPS Holders, the interest rate under the Capital Trust I Junior Subordinated Debentures and the related TruPS Indenture shall be reduced to approximately 9.39% or such other rate necessary to cause the effective rate of interest on all Amended TruPS, in the aggregate, held by any such Electing TruPS Holder on and after the Effective Date to be equal to eight percent (8%) after giving effect to the Electing TruPS Swap; <u>provided</u> that, if all Holders of TruPS Claims make the TruPS Election, than the interest rate under the Capital Trust I Junior Subordinated Debentures, the Capital Trust I Capital Securities, the Capital Trust I Common Securities, and the related TruPS Indenture shall remain 10.25%.

f.  any accrued and unpaid interest through the Effective Date under the applicable TruPS Indentures, the Trust Junior Subordinated Debentures, the Capital Securities, and the Common Securities shall be irrevocably waived and excused; and

g.  all amounts (including all principal, interest, and other payments) payable by the Debtor under or with respect to any and all Junior Amended TruPS are and shall be subordinate and junior in right of payment to the prior payment in full in cash of the Senior Amended TruPS.

53.   "*Electing TruPS Holders*" means those Holders of TruPS Claims that make the TruPS Election on their respective ballots.

54.   "*Electing TruPS Distribution*" means the distribution to the Electing TruPS Holders (if any) of the Junior Amended TruPS, subject to the Electing TruPS Management Contribution, and the Electing TruPS Swap.

55.   "*Electing TruPS Management Contribution*" means the contribution and full assignment by each Electing TruPS Holder to the Management Plan Support Parties of Junior Amended TruPS in an amount of such Electing TruPS Holder's respective Pro Rata share (based on such Electing TruPS Holder's respective Allowed TruPS Claims relative to the Allowed TruPS Claims of all Electing TruPS Holders) of the Management TruPS Amount after giving effect to the Electing TruPS Swap. Following the Electing TruPS Management Contribution, the Management TruPS Amount shall be held directly by the Management Plan Support Parties or their designee.

56.   "*Electing TruPS Swap*" means the swap, pooling, and/or exchange, pursuant to which a portion of the Amended TruPS held by each Electing TruPS Holder on the Effective Date shall be swapped, pooled, and/or

exchanged with portions of the Junior Amended TruPS held by all other Electing TruPS Holders such that the effective rate of interest on all Junior Amended TruPS, in the aggregate, held by any Electing TruPS Holder shall be equal to the effective rate of interest on all Junior Amended TruPS, in the aggregate, held by all other Electing TruPS Holders (and, after giving effect to the Electing TruPS Management Contribution, the Management Plan Support Parties), at a rate of eight percent (8%).

57.    "*Enjoined Actions*" has the meaning set forth in Article VIII.F.

58.    "*Entity*" means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

59.    "*Equity Security*" means any equity security as defined in section 101(16) of the Bankruptcy Code in a Debtor.

60.    "*Estate*" means the estate created for the Debtor in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

61.    "*Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*

62.    "*Exculpated Claim*" means any Claim related to any post-petition act taken or omitted to be taken in connection with, relating to, or arising out of the Chapter 11 Case, the formulation, preparation, dissemination, negotiation, or filing of the Disclosure Statement or the Plan, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the preparation or filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, and the administration and implementation of the Plan, including the distribution of property under the Plan or any other agreement.

63.    "*Exculpated Party*" means each of:  (a) the Debtor; (b) the Reorganized Debtor; (c) the Creditors' Committee (if any) and each member thereof; (d) the Holders of TruPS Claims; (e) the Management Plan Support Parties; (f) the Indenture Trustees; and (g) with respect to each of the foregoing entities in clauses (a) through (f), each such party's current and former affiliates, and such party's and its current and former affiliates' subsidiaries, officers, directors, managers, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals.

64.    "*Executory Contract*" means a contract to which one or more of the Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

65.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date.

66.    "*File*" or "*Filed*" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Case.

67.    "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, seek certiorari, or move for a new trial, re-argument, or rehearing has expired and no appeal, petition for certiorari, or motion for a new trial, re-argument, or rehearing has been timely filed, or as to which any appeal that has been taken, any petition for certiorari, or motion for a new trial, re-argument, or rehearing that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

68.    "*First Bank*" means First Bank and Trust Company of Illinois, a wholly owned subsidiary of the Debtor.

69.    "*General Unsecured Claims*" means any Claim that is neither Secured nor entitled to priority under the Bankruptcy Code or any order of the Bankruptcy Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code and all claims that are not (a) Administrative Claims, (b) Priority Tax Claims, (c) Other Priority Claims, (d) Secured Claims, (e) TruPS Claims, or

6

(f) Section 510(b) Claims.  For the avoidance of doubt, the General Unsecured Claims shall include any deficiency Claims arising from Holders of Secured Claims.

70.    "*Governmental Unit*" means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

71.    "*Holder*" means an Entity holding a Claim or an Interest.

72.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not Unimpaired.

73.    "*Indenture Trustee*" means BONY and U.S. Bank, as trustees under the TruPS Indentures.

74.    "*Indenture Trustee Fees*" means the reasonable compensation, fees and expenses, disbursements and indemnity claims, including, without limitation, attorneys' fees and agents' fees, expenses, costs and disbursements, incurred by or owed to the Indenture Trustee under the TruPS Documents and related and ancillary documents, incurred prior to the Effective Date.

75.    "*Interests*" means the common stock and any other equity, ownership, or profits interests in and of the Debtor and options, rights, warrants, or other agreements or securities to acquire the common stock and/or any other equity, ownership, or profits interests in and of the Debtor (whether or not arising under or in connection with any employment agreement), including any Claim against the Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

76.    "*Internal Revenue Code*" means title 26 of the United States Code, 26 U.S.C. §§ 1–9834, as may be amended from time to time.

77.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as may be amended from time to time.

78.    "*Junior Amended TruPS*" means, collectively, those (a) Amended Debentures (if any), (b) Amended Capital Securities (if any), and (c) Amended Common Securities (if any), Reinstated as amended by the Electing TruPS Amendments on and after the Effective Date, which shall be obligations of the Reorganized Debtor.

79.    "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

80.    "*Majority Interests*" means all Interests held or controlled by Holders that are parties to the Plan Support Agreement.

81.    "*Management Loans*" mean those loans in an aggregate amount of approximately $180,000.00 by the Electing TruPS Holders to the Management Plan Support Parties, secured by a first-priority security interest on the Management TruPS Amount, to be used to finance a portion of the Plan Funding Management Contribution, which loans shall be governed by loan agreements or other applicable documents among the parties included in the Plan Supplement (which shall provide, among other things, that such loans are contingent upon the Management Plan Support Parties funding $120,000.00 of the Plan Funding Management Contribution in accordance with the Plan Support Agreement).

82.    "*Management Plan Support Parties*" means those members of management of the Debtor who are party to the Plan Support Agreement.

83.    "*Management TruPS Amount*" means a portion of the Junior Amended in an aggregate principal face amount of $300,000.00 (an amount equal to the Plan Funding Management Contribution), which will be contributed and assigned in full by the Electing TruPS Holders to the Management Plan Support Parties (or to their designee, which in any case shall be controlled by the Management Plan Support Parties) pursuant to the Electing TruPS Management Contribution.

7

84.     "*Minority Interests*" means all Interests held or controlled by any Entity not party to the Plan Support Agreement.

85.     "*Non-Electing TruPS Distribution*" means the distribution to the Holders of TruPS Claims (if any) that are not Electing TruPS Holders of Senior Amended TruPS in the aggregate principal amount of $800,000.00; provided that, if all Holders of TruPS Claims make the TruPS Election, there shall be no Non-Electing TruPS Distribution, and the principal face amount of all Junior Amended TruPS shall be $11,500,000.00 in the aggregate.

86.     "*Non-Electing TruPS Amendments*" means those certain amendments to the Trust Junior Subordinated Debentures, Capital Securities, and Common Securities held by Holders of TruPS Claims that are not Electing TruPS Holders and the related TruPS Indentures, pursuant to which, on the Effective Date:

      a.     the liquidation face amount of all Capital Securities held by Holders of TruPS Claims that are not Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Holders of TruPS Claims that are not Electing TruPS Holders) to $800,000.00;

      b.     the principal face amount of all Common Securities issued by those Trusts that have issued Capital Securities to those Holders of TruPS Claims that are not Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Holders of TruPS Claims that are not Electing TruPS Holders) to $24,800.00;

      c.     the principal face amount of all Trust Junior Subordinated Debentures held by the Trusts for the benefit of the Holders of TruPS Claims that are not Electing TruPS Holders shall be reduced (on a Pro Rata basis based on the amounts of the respective Allowed TruPS Claims of Holders of TruPS Claims that are not Electing TruPS Holders) to $824,000.00;

      d.     the Reorganized Debtor shall have the right to extend the deferral of all interest payments under the Senior Amended TruPS, in the manner set forth in the governing documents of the Amended TruPS, until the earlier of (i) four (4) years after the Effective Date (which is approximately nine (9) years after the last deferral period began) or (ii) one (1) year after that certain written agreement, dated as of May 31, 2011, between the Federal Reserve Bank of Chicago and the Debtor has been terminated or lifted;

      e.     any accrued and unpaid interest through the Effective Date under the applicable TruPS indentures and the applicable Trust Junior Subordinated Debentures, Capital Securities, and Common Securities shall be irrevocably waived and excused; and

      f.     all amounts (including all principal, interest, and other payments) payable by the Debtor under or with respect to any and all Senior Amended TruPS are and shall be senior in right of payment in all respects to the Junior Amended TruPS.

87.     "*Other Priority Claims*" means any Claim, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

88.     "*Petition Date*" means April 29, 2015, the date on which the Debtor commenced the Chapter 11 Case.

89.     "*Plan*" means this *Debtor's Prepackaged Chapter 11 Plan of Reorganization*, including the Plan Supplement and all exhibits, supplements, appendices, and schedules, which are incorporated herein by reference, as amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules.

KE 35583166

90.     "*Plan Funding Contributions*" means, collectively, the Plan Funding Management Contribution and the Plan Funding TruPS Contribution.

91.     "*Plan Funding Escrow*" means an escrow account maintained with a third-party escrow agent into which the Electing TruPS Holders must have placed the entirety of the Plan Funding TruPS Contribution (including the Management Loans), and into which the Management Plan Support Parties must have placed the Plan Funding Management Contribution, in each case on or before April 28, 2015 (or such earlier date as may have been agreed). The amounts held in the Plan Funding Escrow shall not be or be deemed property of the Debtor's Estate under section 541 of the Bankruptcy Code and shall not be released to the Debtor or any other Entity unless and until the Effective Date occurs.

92.     "*Plan Funding Management Contribution*" means a contribution by the Management Plan Support Parties of $300,000.00 (a portion of which in an amount of $180,000.00 shall be financed by the Electing TruPS Holders pursuant to the Management Loans), all of which was placed by the Management Plan Support Parties and the Electing TruPS Holders into the Plan Funding Escrow on or before April 28, 2015; provided that the amounts held in the Plan Funding Escrow shall not be released to the Debtor or any other Entity unless and until the Effective Date occurs.

93.     "*Plan Funding TruPS Contribution*" means a contribution by Electing TruPS Holders (on a Pro Rata basis based on the amount of the respective Allowed TruPS Claims relative to the Allowed TruPS Claims of all Electing TruPS Holders) of Cash in an amount of $1,000,000.00 (a) less the amount of the Plan Funding Management Contribution and (b) plus the loans made by the Electing TruPS Holders to the Management Plan Support Parties under the Management Loans in an aggregate amount of $180,000.00 to partially fund the Plan Funding Management Contribution, which amount was placed by the Electing TruPS Holders into the Plan Funding Escrow on or before April 28, 2015; provided that the amounts held in the Plan Funding Escrow shall not be released to the Debtor or any other Entity unless and until the Effective Date occurs.

94.     "*Plan Sponsor*" means a non-Debtor Entity that agrees, (a) pursuant to an assignment of the Stock Purchase Agreement or (b) pursuant to other or additional definitive documentation reasonably acceptable to the Debtor, the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders, Holders of a majority of the Majority Interests, and during the Exclusivity Period (as defined in the Stock Purchase Agreement) the Management Plan Support Parties, to purchase all interests in the Debtor outstanding on and after the Effective Date.

95.     "*Plan Supplement*" means the documents and forms of documents, schedules, and exhibits to the Plan to be Filed by the Debtor no later than seven (7) days before the Confirmation Hearing and additional documents Filed before the Effective Date as supplements or amendments to the Plan Supplement, as amended, modified, or supplemented from time to time in accordance with the terms of the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including: (a) the Plan Support Agreement; (b) the Stock Purchase Agreement; (c) the TruPS Amendments; (d) a list of retained Causes of Action; (e) the loan agreements or other applicable documents governing the Management Loans; and (f) to the extent known, the identity of the members of the board of directors of the Reorganized Debtor and the nature and compensation for any member of the board of directors who is an "insider" under section 101(31) of the Bankruptcy Code.  Any reference to the Plan Supplement in this Plan shall include each of the documents identified above as (a) through (f).

96.     "*Plan Support Agreement*" means that certain Plan Support Agreement dated as of March 31, 2015 by and among the Debtor, the Holders of Majority Interests, certain Holders of TruPS Claims, and the Management Plan Support Parties, including all exhibits and schedules attached thereto and as may be amended from time to time according to its terms.

97.     "*Priority Tax Claim*" means any Claim of the kind specified in section 507(a)(8) of the Bankruptcy Code.

98.     "*Pro Rata*" means the proportion that an Allowed Claim or Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class.

9

99.    "*Professional*" means an Entity:   (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code; or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

100.    "*Professional Fee Escrow Account*" means a non-interest-bearing escrow account to hold and maintain an amount of Cash equal to the Professional Fee Escrow Amount funded by the Debtor after the Confirmation Date but at least one (1) day prior to the Effective Date solely for the purpose of paying all Allowed and unpaid Accrued Professional Compensation Claims.   Such Cash shall remain subject to the jurisdiction of the Bankruptcy Court.

101.    "*Professional Fee Escrow Amount*" means the aggregate Accrued Professional Compensation Claims through the Effective Date as estimated in accordance with Article II.B.3.

102.    "*Proof of Claim*" means the proof of Claim Filed by a holder on account of such Claim.

103.    "*Recapitalization Right to Purchase*" means the right under the Stock Purchase Agreement to purchase all (but not less than all) of the Majority Interests for $10.00 on or after the Effective Date, subject to the terms and conditions of the Stock Purchase Agreement, including that any Entity seeking so to purchase the Majority Interests make (immediately upon such purchase) a capital contribution to the Debtor for the purpose of recapitalizing First Bank in an amount sufficient to receive regulatory approval for First Bank's recapitalization and ownership change.   For so long at the Plan Support Agreement remains effective and has not been validly terminated, the Debtor will use commercially reasonable efforts to cooperate in good faith with the Plan Sponsor and the Electing TruPS Holders to take actions necessary or appropriate to address regulatory matters related to First Bank's recapitalization and ownership change.

104.    "*Regulators*" means the Federal Deposit Insurance Corporation, the Illinois Department of Financial and Professional Regulation, the Federal Reserve Bank of Chicago or the Board of Governors of the Federal Reserve System.

105.    "*Reinstated*" means:   (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim or Interest entitles the Holder of such Claim or Interest so as to leave such Claim or Interest (except the Majority Interests) Unimpaired; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of a Claim or Interest to demand or receive accelerated payment of such Claim or Interest after the occurrence of a default:   (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (ii) reinstating the maturity (to the extent such maturity has not otherwise accrued by the passage of time) of such Claim or Interest as such maturity existed before such default; (iii) compensating the Holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim or Interest arises from a failure to perform a nonmonetary obligation other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensating the Holder of such Claim or Interest (other than a Debtor or an insider) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim or Interest entitles the Holder.

106.    "*Released Party*" means each of: (a) Holders of the TruPS Claims; (b) the Indenture Trustees; (c) the Debtor and the Reorganized Debtor, (d) the Management Plan Support Parties, and (e) with respect to each of the foregoing entities in clauses (a) through (d), such person's current and former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each case in their capacity as such.   No Holder of a Claim or Interest who votes to reject the Plan shall be a Released Party.

107.    "*Releasing Party*" means each of: (a) the Holders of TruPS Claims, and for each such Holder, such person's current and former Affiliates, subsidiaries, officers, directors, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in each

10

case in their capacity as such; (b) the Indenture Trustees; (c) the Holders of Interests; (d) the Creditors' Committee; (e) the Management Plan Support Parties; and (f) without limiting the foregoing clauses (a), (b), (c), and (d), each Holder of a Claim against or an Interest in the Debtors that (1) votes to accept the Plan and (2) does not opt out of the Plan's release provisions with respect to the Released Parties pursuant to an election contained on the relevant Ballot.

108.    "*Reorganized Debtor*" means the Debtor, or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date.

109.    "*Restructuring Transactions*" means one or more arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on or before the Effective Date or as soon as reasonably practicable thereafter, that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the Sale Transaction, including (a) the Electing TruPS Management Contribution, (b) the Electing TruPS Swap, (c) the Management Loans, (d) the Plan Funding Management Contribution; (e) the Plan Funding TruPS Contribution; (f) the TruPS Amendments; (g) the execution and delivery of appropriate agreements or other documents of merger, sale, consolidation, equity issuance, certificates of incorporation, operating agreements, bylaws, or other documents containing terms that are consistent with or reasonably necessary to implement the terms of the Plan and that satisfy the requirements of applicable law; (h) the execution and delivery of appropriate instruments of sale, equity issuance, transfer, assignment, assumption, or delegation of any property, right, liability, duty, or obligation on terms consistent with the terms of the Plan; and (i) all other actions that the Debtor determines are necessary or appropriate.

110.    "*Sale Transaction*" means that certain transaction between the Holders of the Majority Interests and the Plan Sponsor (a) as set forth in the Stock Purchase Agreement or (b) pursuant to other or additional definitive documentation reasonably acceptable to the Debtor, the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders, Holders of a majority of the Majority Interests, and during the Exclusivity Period (as defined in the Stock Purchase Agreement) the Management Plan Support Parties, to purchase all interests in the Debtor outstanding on and after the Effective Date.

111.    "*Section 510(b) Claim*" means any Claim against the Debtor arising from rescission of a purchase or sale of a Security of the Debtor or any Affiliate of the Debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

112.    "*Secured*" means when referring to a Claim:  (a) secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) Allowed as such pursuant to the Plan.

113.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, together with the rules and regulations promulgated thereunder.

114.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

115.    "*Senior Amended TruPS*" means, collectively, those (a) Amended Debentures (if any), (b) Amended Capital Securities (if any), and (c) Amended Common Securities (if any), Reinstated as amended by the Non-Electing TruPS Amendments on and after the Effective Date, which shall be obligations of the Reorganized Debtor.

116.     "*Statutory Trust I*" means Hershenhorn Statutory Trust I, a statutory business trust, formed under Connecticut law pursuant to the Statutory Trust I Declaration, established for the sole purpose of issuing securities representing undivided beneficial interests in Statutory Trust I's assets.

117.    "*Statutory Trust I Capital Securities*" means the 12,000 capital securities of Statutory Trust I with an aggregate liquidation face amount of $12,000,000 issued pursuant to the Statutory Trust I Declaration.

118.    "*Statutory Trust I Common Securities*" means the 372 common securities of Statutory Trust I with an aggregate liquidation face amount of $372,000 issued pursuant to the Statutory Trust I Declaration.

119.    "*Statutory Trust I Declaration*" means that certain Amended and Restated Declaration of Trust dated as of July 31, 2001 (as amended, modified, or supplemented from time to time) by and among Robert Hershenhorn, Alexis Hershenhorn, and C. Richard Schuler, as Administrators, U.S. Bank, as institutional trustee, Hershenhorn Bancorporation, Inc., as sponsor, and the holders from time to time of undivided beneficial interests in the assets of the Trust, including the designation of the terms of the Capital Securities as set forth in Annex I thereto.

120.    "*Statutory Trust I Junior Subordinated Debentures*" means the $12.372,000 in principal face amount of the Debtor's Floating Rate Junior Subordinated Deferrable Interest Debentures due 2031.

121.    "*Stock Purchase Agreement*" means that certain Stock Purchase Agreement, dated as of March 31, 2015, by and among the purchasers and sellers thereto.

122.    "*Third Party Release*" means the release provision set forth in Article VIII.D hereof.

123.    "*Third Party Releasees*" means the Debtor, the Reorganized Debtor, and the Released Parties.

124.    "*TruPS Amendments*" means the Electing TruPS Amendments and/or the Non-Electing TruPS Amendments, as applicable.

125.    "*TruPS Claims*" means all Claims under the TruPS Documents, and including any Claims related to or arising out of the Trust Junior Subordinated Debentures, the Capital Securities, the Common Securities, the TruPS Indentures, the Trust Declarations, and any related and ancillary documents and instruments, which Claims include, but are not limited to, principal and accrued and unpaid interest as of the Petition Date and, to the extent applicable, postpetition interest.  For the avoidance of doubt, TruPS Claims shall include all of the Claims set forth in the preceding sentence that could be asserted by one or more of the several parties to such agreement and documents without duplication.

126.    "*TruPS Documents*" means collectively the TruPS Indentures, Trust Declarations, the Capital Securities and Common Securities issued by the TruPS, and any related and ancillary documents and instruments.

127.    "*TruPS Election*" means the election by any Holder of TruPS Claims on such Holder's ballot (a) to receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for all (but not less than all) of such Holder's Allowed TruPS Claims, its Pro Rata share (based on the amount of its Allowed TruPS Claims relative to the Allowed TruPS Claims of any other Holder of TruPS Claims that makes such election) of the Electing TruPS Distribution and to forgo any share of the Senior Amended TruPS, if any; and (b) to contribute its Pro Rata share (based on the amount of its Allowed TruPS Claims relative to the Allowed TruPS Claims of any other Holder of TruPS Claims that makes such election) of the Plan Funding TruPS Contribution.  Upon making such election, each Electing TruPS Holder shall be required to place its Pro Rata portion (based on the amount of its Allowed TruPS Claims relative to the Allowed TruPS Claims of any other Holder of TruPS Claims that makes the TruPS Election) of the Plan Funding TruPS Contribution in the Plan Funding Escrow on or before April 28, 2015, and failure to do so on or before April 28, 2015 shall irrevocably result in such Holder of TruPS Claim to be deemed to have elected not to make the TruPS Election.  The TruPS Election or failure to make the TruPS Election shall be irrevocable by any Entity, including the Debtor and the Holder of the TruPS Claim making or failing to make such election.

128.    "*TruPS Indentures*" means, collectively:  (a) the indenture dated as of July 16, 2001, between the Debtor, as issuer, and BONY, as trustee, pursuant to which the Debtor issued the 10.25% Junior Subordinated Deferrable Interest Debentures due July 25, 2031; (b) the indenture dated as of July 16, 2001, between the Debtor, as issuer, and BONY, as trustee, pursuant to which the Debtor issued the Floating Rate Junior Subordinated Deferrable

Interest Debentures due July 25, 2031; and (c) the indenture dated as of July 31, 2001, between the Debtor, as issuer, and U.S. Bank, as trustee, pursuant to which the Debtor issued the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2031, in each case as may have been amended, modified, or supplemented.

129.    "*Trust Declarations*" means, collectively, the Capital Trust I Declaration, the Capital Trust II Declaration, and the Statutory Trust I Declaration.

130.    "*Trust Junior Subordinated Debentures*" means, collectively, the Capital Trust I Junior Subordinated Debentures, the Capital Trust II Junior Subordinated Debentures, and the Statutory Trust I Junior Subordinated Debentures.

131.    "*Trusts*" means, collectively Capital Trust I, Capital Trust II, and Statutory Trust I.

132.    "*Unexpired Lease*" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

133.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

134.    "*U.S. Bank*" means U.S. Bank National Association, as successor trustee to State Street Bank and Trust Company of Connecticut, National Association.

135.    "*U.S. Trustee*" means the United States Trustee for the Northern District of Illinois.

136.    "*U.S. Trustee Fees*" means fees arising under section 1930(a)(6) of the Judicial Code and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

137.    "*Voting Deadline*" means April 28, 2015, the date by which all Holders of Claims entitled to vote on the Plan must have submitted their ballots in accordance with the Disclosure Statement and related solicitation procedures.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with applicable federal law, including the Bankruptcy Code and Bankruptcy Rules; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (12) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (13) all references to statutes, regulations, orders, rules of courts, and the like shall mean

13

as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (14) all references to events occurring on a specified date shall mean that the event will occur on that date or as soon thereafter as reasonably practicable; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; and (16) any effectuating provisions may be interpreted by the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control. Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

C.      *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); provided that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the State of Delaware or any other state of incorporation of the Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III hereof.

A.      *General Administrative Claims.*

1.      Treatment.

Except as otherwise specified in this Article II or agreed to by the Holder of an Administrative Claim, each Holder of an Allowed Administrative Claim will receive, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Administrative Claim, Cash equal to the amount of such Allowed Administrative Claim (a) on the Effective Date or as soon as reasonably practicable thereafter, (b) if the Administrative Claim is not Allowed as of the Effective Date, no later than 30 days after the date on which such Administrative Claim becomes a Allowed Administrative Claims or as soon as reasonably practicable thereafter, or (c) if the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of business after the Petition Date, pursuant to the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the Holder of such Allowed Administrative Claim and without any further notice to or action, order, or approval of the Bankruptcy Court.

14

2.        Administrative Claims Bar Date.

Except as provided in Article II.B with respect to Professionals seeking payment of Accrued Professional Compensation Claims and in Article II.E with respect to U.S. Trustee Fees for the Chapter 11 Case and all other fees payable pursuant to section 1930(a) of the Judicial Code, any Entity seeking payment of an Administrative Claim shall File with the Bankruptcy Court and serve on the Debtor an application for approval and allowance of such Claim no later than the date that is 30 days after the Effective Date.  Holders of Administrative Claims that do not File and serve such application by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or its property, and such Administrative Claims shall be deemed discharged as of the Effective Date.

3.        Administrative Claims Objection Deadline.

Any objection to an application for approval or allowance of any Administrative Claim shall be Filed no later than the later of (a) the date that is 120 days after the Effective Date and (b) the date that is 120 days after such application is or was Filed.

B.        *Professional Compensation.*

1.        Professional Fee Escrow Account.

As soon as reasonably practicable after the Confirmation Date and no later than one (1) day prior to the Effective Date, the Debtor shall establish the Professional Fee Escrow Account.  On the Effective Date, the Debtor, the Electing TruPS Holders, and the Management Plan Support Parties shall cause to be funded from the Plan Funding Escrow the Professional Fee Escrow Account with Cash in the amount of the aggregate Professional Fee Escrow Amount.  The Professional Fee Escrow Account shall be maintained in trust for the Professionals and shall not be considered property of the Debtor's Estate.

2.        Final Fee Applications and Payment of Accrued Professional Compensation Claims.

All final requests for payment of Claims of a Professional shall be Filed no later than 30 days after the Effective Date.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior Bankruptcy Court orders, the Allowed amounts of such Accrued Professional Compensation Claims shall be determined by the Bankruptcy Court.  The amount of Accrued Professional Compensation Claims owing to the Professionals, after taking into account any prior payments and after applying any retainers, shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by a Final Order.  To the extent that funds held in the Professional Fee Escrow Account are unable to satisfy the amount of Accrued Professional Compensation Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, which shall be satisfied in accordance with Article II.A.  After all Allowed Accrued Professional Compensation Claims have been paid in full, the escrow agent shall return any excess amounts to the Plan Funding Escrow.

3.        Professional Fee Escrow Amount.

To receive payment for unbilled fees and expenses incurred through the Effective Date, the Professionals shall estimate their Accrued Professional Compensation Claims before and as of the Effective Date and shall deliver such estimate to the Debtor no later than five (5) days prior to the anticipated Effective Date; <u>provided</u> that no such estimate shall be considered an admission with respect to the fees and expenses of any such Professional, and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtor may estimate a reasonable amount of unbilled fees and expenses of such Professional; <u>provided</u> that no such estimate shall be binding or considered an admission with respect to the fees and expenses of any such Professional. The total amount so estimated shall comprise the Professional Fee Escrow Amount.

C.      *Post-Confirmation Date Fees and Expenses.*

Except as otherwise specifically provided in the Plan, from and after the Effective Date, the Debtor shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable legal, professional, or other fees and expenses billed by any Professional. Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

D.      *Priority Tax Claims.*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

E.      *Statutory Fees.*

The Debtor shall pay all U.S. Trustee Fees for the Chapter 11 Case and all other fees payable pursuant to section 1930(a) of the Judicial Code for each quarter (including any fraction thereof) until the Chapter 11 Case is converted, dismissed, or closed, whichever occurs first.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Claims and Interests, except for Administrative Claims and Priority Tax Claims, are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

KE 35583166

1.        Class Identification.

The classification of Claims and Interests against the Debtor pursuant to the Plan is as follows:

| Class | Claims and Interests | Status | Voting Rights |
|-------|---------------------|--------|---------------|
| Class 1 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 2 | Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 3 | TruPS Claims | Impaired | Entitled to Vote |
| Class 4 | General Unsecured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| Class 5 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 6 | Majority Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| Class 7 | Minority Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.        *Treatment of Claims and Interests.*

1.        Class 1 – Other Priority Claims.

a.        *Classification*:  Class 1 consists of all Other Priority Claims against the Debtor.

b.        *Allowance*:  Notwithstanding anything in the Plan to the contrary, a Class 1 Claim, if existing, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any asserted Class 1 Claim and believe that no Class 1 Claim exists.

c.        *Treatment*:  Except to the extent that a Holder of an Allowed Claim in Class 1 agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 1, each such Holder shall be paid in full in Cash by the Reorganized Debtor on the later of the Effective Date and the date such Class 1 Claim becomes an Allowed Class 1 Claim or as soon as reasonably practicable thereafter.

d.        *Voting*:  Class 1 is Unimpaired under the Plan.  Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.        Class 2 – Secured Claims.

a.        *Classification*:  Class 2 consists of all Secured Claims against the Debtor.

b.        *Allowance*:  Notwithstanding anything in the Plan to the contrary, a Class 2 Claim, if existing, may only become Allowed by Final Order of the Bankruptcy Court.  The Debtors are not aware of any asserted Class 2 Claim and believe that no Class 2 Claim exists.

c.        *Treatment*:  Except to the extent that a Holder of an Allowed Claim in Class 2 agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Claim in Class 2, each such Holder shall, at the sole option of the Debtor:

17

    i.        be paid in full in Cash, including the payment of any interest required to be paid under section 506(b) of the Bankruptcy Code, on the Effective Date or as soon thereafter as reasonably practicable or, if payment is not then due, in accordance with the payment terms of any applicable agreement;

    ii.      receive the collateral securing any such Allowed Secured Claim and be paid any interest required to be paid under section 506(b) of the Bankruptcy Code on the Effective Date or as soon thereafter as reasonably practicable; or

    iii.    otherwise be treated in any other manner such that the Allowed Secured Claim shall be rendered Unimpaired on the later of the Effective Date and the date on which such Secured Claim becomes an Allowed Secured Claim or as soon as reasonably practicable thereafter.

    d.    *Voting*:  Class 2 is Unimpaired under the Plan.  Holders of Claims in Class 2 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

3.    Class 3 – TruPS Claims.

    a.    *Classification*:  Class 3 consists of all TruPS Claims against the Debtor.

    b.    *Allowance*:

    i.        TruPS Claims under the Capital Trust I Junior Subordinated Debentures shall be Allowed in an amount of \$29,654,665.85 or such other amount agreed to in writing by the Debtor and BONY.

    ii.      TruPS Claims under the Capital Trust II Junior Subordinated Debentures shall be Allowed in an amount of \$7,737,659.94 or such other amount agreed to in writing by the Debtor and BONY.

    iii.    TruPS Claims under the Statutory Trust I Junior Subordinated Debentures shall be Allowed in an amount of \$15,208,962.43 or such other amount agreed to in writing by the Debtor and U.S. Bank.

    c.    *Default TruPS Claims Treatment*:  Except to the extent that a Holder of an Allowed Claim in Class 3 agrees to a less favorable treatment or makes the TruPS Election, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim in Class 3, such Holder shall receive its Pro Rata share (based on the amount of its Allowed TruPS Claims relative to the Allowed TruPS Claims of any other Holder of TruPS Claims that does not make the TruPS Election) of the Non-Electing TruPS Distribution; <u>provided</u> that, if all Holders of TruPS Claims make the TruPS Election, there shall be no Non-Electing TruPS Distribution, and the principal face amount of all Junior Amended TruPS shall be \$11,500,000.00 in the aggregate.

    d.    *Electing TruPS Holders Treatment*:  If a Holder of an Allowed Claim in Class 3 makes the TruPS Election, in full and final satisfaction, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim in Class 3, such Holder shall receive its Pro Rata share (based on the amount of its Allowed TruPS Claims relative to the Allowed TruPS Claims of any other Holder of TruPS Claims that makes the TruPS Election) of the Electing TruPS Distribution.

    e.    *Voting*:  Class 3 is Impaired under the Plan.  Holders of Claims in Class 3 are entitled to vote to accept or reject the Plan.

18

f.      *Indenture Trustee Fees*:  Indenture Trustee Fees will be paid to each Indenture Trustee, by only to the extent set forth hereto in Article VI.B.

4.      Class 4 – General Unsecured Claims.

a.      *Classification*:  Class 4 consists of all General Unsecured Claims against the Debtor.

b.      *Treatment*:  Except to the extent that a Holder of a General Unsecured Claim agrees to less favorable treatment of its Allowed General Unsecured Claim or has been paid prior to the Effective Date, each such Holder shall receive on the latest of the Effective Date, the date such Class 4 Claim becomes an Allowed Class 4 Claim, and the date or dates on which such Allowed Class 4 Claim becomes due and payable in the ordinary course in accordance with contractual terms without regard to acceleration, or as soon as reasonably practicable thereafter, payment in full in Cash from the Reorganized Debtor.

c.      *Voting*:  Class 4 is Unimpaired under the Plan.  Holders of Claims in Class 4 are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

5.      Class 5 – Section 510(b) Claims.

a.      *Classification*:  Class 5 consists of all Section 510(b) Claims.

b.      *Treatment*:  On the Effective Date, all Claims in Class 5 shall be cancelled without any distribution.

c.      *Voting*:  Class 5 is Impaired under the Plan.  Holders of Claims in Class 5 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6 –</u> Majority Interests.

a.      *Classification*:  Class 6 consists of all Majority Interests.

b.      *Treatment*:  Majority Interests shall be deemed Reinstated as of the Effective Date subject in all respects to the Recapitalization Right to Purchase and solely to comply with applicable regulations pending the exercise of the Recapitalization Right to Purchase. There shall be no distribution to any Holder of Majority Interests on account of such Majority Interests.

c.      *Voting*:  Class 6 is Impaired under the Plan.  Holders of Interests in Class 6 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.      <u>Class 7 –</u> Minority Interests.

a.      *Classification*:  Class 7 consists of all Minority Interests.

b.      *Treatment*:  Minority Interests shall be discharged, canceled, released, and extinguished as of the Effective Date and will be of no further force or effect.  There shall be no distribution to any Holder of Minority Interests on account of such Minority Interests.

c.      *Voting*:  Class 6 is Impaired under the Plan.  Holders of Interests in Class 6 are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

KE 35583166

C.      *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights in respect of any Unimpaired Claims, including, all rights in respect of legal and equitable defenses to or setoffs or recoupment against any such Unimpaired Claims.

D.      *Acceptance or Rejection of the Plan.*

1.      Voting Classes.

Class 3 is Impaired under the Plan.  Each Holder of a Claim in Class 3 is entitled to vote to accept or reject the Plan.

2.      Presumed Acceptance of the Plan.

Classes 1, 2, and 4 are Unimpaired under the Plan.  Each Holder of a Claim in such Classes is presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

3.      Presumed Rejection of Plan.

Classes 5, 6, and 7 are Impaired and shall receive no distribution under the Plan.  Each Holder of a Claim or Interest in such Classes is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject the Plan.

E.      *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims.  The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

F.      *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.  In the absence of any such specific determination, the applicable Plan designation or designations shall control.

G.      *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero (0) as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

H.      *Subordinated Claims.*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

20

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.      *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Holders of Allowed Interests in any Class are intended to be and shall be final.

B.      *Sources of Consideration for Plan Distributions.*

The Reorganized Debtor shall fund distributions under the Plan with Cash on hand, including Cash from operations and the Plan Funding Contributions, and the Amended TruPS.  Each distribution and issuance referred to in Article VI hereof shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, the Debtor, the Electing TruPS Holders, and the Management Plan Support Parties shall cause to be funded from the Plan Funding Escrow the Professional Fee Escrow Account with Cash in the aggregate amount of the Professional Fee Escrow Amount.

On the Effective Date or as soon as practicable thereafter:

1.      the Debtor or the Reorganized Debtor, as the case may be, the Electing TruPS Holders, and the Management Plan Support Parties shall cause to be funded from the Plan Funding Escrow to the Debtor or the Reorganized Debtor, as the case may be, the aggregate amount of any:  (a) Allowed Administrative Claims (less amount of the Professional Fee Escrow Amount funded into the Professional Fee Escrow Account); (b) Allowed Cure Claims; (c) Allowed Priority Tax Claims; (d) Allowed Other Priority Claims; (e) Allowed Secured Claims; and (f) Allowed General Unsecured Claims (including any Claims of up to $250,000 in the aggregate held by or payable to First Bank and the Indenture Trustee Fees but only to the extent set forth in Article VI.B) less the amount of any such Claim to the extent that such Claim is (x) held by and payable to First Bank (except for such Claims of up to $250,000 in the aggregate) or otherwise incurred in the ordinary course of the Debtor's business and operations, (y) payable by any Affiliate of the Debtor; and/or (z) not payable in Cash (as provided by any documents giving rise to or governing such Claim or otherwise agreed by the Debtor and the Holder(s) of such Claim) (such aggregate amount the "Effective Date Funding Amount"); and

2.      the Debtor or the Reorganized Debtor, as the case may be, the Electing TruPS Holders, and the Management Plan Support Parties shall cause to be returned from the Plan Funding Escrow to the Electing TruPS Holders and/or paid to the Debtor or the Reorganized Debtor pursuant to this paragraph the aggregate amount maintained therein in excess of the total aggregate amount of any asserted or assertable Claims that are:  (a) Administrative Claims; (b) Cure Claims; (c) Priority Tax Claims; (d) Other Priority Claims; (e) Secured Claims; and (f) General Unsecured Claims, in each case as estimated by the Debtor (and agreed to by the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders (such aggregate amount the "Effective Date Excess Amount").  The Effective Date Excess Amount shall be returned or paid as follows:  (x) first, all amounts up to $300,000 shall be returned to the Electing TruPS Holders on a Pro Rata basis (based on such Electing TruPS Holders' respective portion of the Plan Funding Contributions); and (y) second, any amount in excess of $300,000 shall be paid to the Debtor or the Reorganized Debtor, as the case may be.

KE 35583166

On and after the Effective Date, there shall be maintained in the Plan Funding Escrow the balance of the Plan Funding Contributions after taking into account (a) the disbursement of the Effective Date Funding Amount to the Debtor or the Reorganized Debtor, as the case may be, and (b) the disbursement of the Effective Date Excess Amount to the Electing TruPS Holders or the Debtor or the Reorganized Debtor (less subsequent disbursement from the Plan Funding Escrow as described in this paragraph).   After the Effective Date, as and when any (a) Administrative Claim (except for any Accrued Professional Compensation Claim unless such Claim is not satisfied from the Professional Fee Escrow Account), (b) Cure Claim; (c) Priority Tax Claim, (d) Other Priority Claim, (e) Secured Claim, and (f) General Unsecured Claim becomes an Allowed Claim (except to the extent that such Claim is (x) held by and payable to First Bank (except to the extent such Claims of up to $250,000 in the aggregate are payable as a portion of the Effective Date Funding Amount) or otherwise incurred in the ordinary course of the Debtor's business and operations, (y) payable by any Affiliate of the Debtor; and/or (z) not payable in Cash), the Reorganized Debtor, the Electing TruPS Holders, and the Management Plan Support Parties shall cause to be funded from the Plan Funding Escrow to the Reorganized Debtor the amount of any such Allowed Claim, and the Reorganized Debtor shall make a distribution on account of such Allowed Claim according to the Plan.

After the disallowance or payment of all Claims (as determined by the Debtor in consultation with the Electing TruPS Holders), the Reorganized Debtor, the Electing TruPS Holders, and the Management Plan Support Parties shall cause the Plan Funding Escrow to be closed, and any amounts that remain in the Plan Funding Escrow shall be returned to the Electing TruPS Holders on a Pro Rata basis (based on such Electing TruPS Holders' respective portion of the Plan Funding TruPS Contribution).

Notwithstanding anything in the Plan to the contrary, under no circumstances shall the amounts held in the Plan Funding Escrow ever be used directly to fund the Claims of any officers or directors of the Debtor, the Reorganized Debtor, or First Bank.

C.      *Restructuring Transactions.*

On the Effective Date and thereafter, the Debtor or the Reorganized Debtor, as applicable, shall facilitate the grant of the Recapitalization Right to Purchase and ultimate consummation of the Sale Transaction pursuant to the Stock Purchase Agreement.

On or before the Effective Date and thereafter, the Debtor or Reorganized Debtor, as applicable, are authorized, without further order of the Bankruptcy Court, to take all actions as may be necessary to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan or the Stock Purchase Agreement, including:  (1) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Restructuring Transactions.

The Debtor or the Reorganized Debtor, as applicable, will use commercially reasonable efforts in good faith to pursue the Restructuring Transactions (including the Sale Transaction) and will not propose, file, support any transaction, recapitalization, restructuring, workout, plan of arrangement, plan of reorganization, or sale process other than the Restructuring Transactions (including the Sale Transaction); provided that the Debtor may pursue a transaction, recapitalization, restructuring, workout, plan of arrangement, plan of reorganization, or sale process other than as contemplated by the Plan if the board of directors of the Debtor reasonably determines in good faith that the continued performance in furtherance of the Restructuring Transactions (including the Sale Transaction) would be inconsistent with the exercise of the Debtor's fiduciary duties under applicable law.

KE 35583166

Until any valid termination of the Plan Support Agreement, (a) the Debtor or the Reorganized Debtor, as applicable, shall not sell, assign, transfer, hypothecation, encumber, dilute, or otherwise impair of any shares of the Debtor or Reorganized Debtor (as applicable) that are the subject of the Stock Purchase Agreement, issue any shares, stock, or other right, title, or interest in or to the Debtor that is not subject to the Stock Purchase Agreement (and in furtherance thereof, the Debtor shall cause all shares, stock, and other ownership interests in or to the Debtor to bear a legend that same are fully subject to the terms and conditions of the Stock Purchase Agreement), or take any other action that is inconsistent with the intent and purposes contemplated in the Plan; and (b) the Debtor or Reorganized Debtor, as applicable, shall not issue or assume (whether as a principal, guarantor, or otherwise) any additional indebtedness for borrowed money outside the ordinary course of business.

All of the obligations of the Debtor, the Reorganized Debtor, and each member of the board of directors of the Reorganized Debtor or First Bank shall be subject to, and limited by, any instruction or direction made by any Regulator after the date hereof, including any written instruction or directive that is issued after the Effective Date and pursuant to an examination, visitation or other regulatory review.  If the financial condition of First Bank deteriorates significantly, including if the regulatory capital ratios of First Bank decrease significantly, the Debtor or the Reorganized Debtor, as applicable, may need to take actions that result in the recapitalization of First Bank, which actions may include a sale or bankruptcy.

D.    *Sale Transaction.*

On the Effective Date, the Debtor, the Holders of the Majority Interests, the Plan Sponsor, and any assignee or transferee of the Recapitalization Right to Purchase shall be authorized to issue the Recapitalization Right to Purchase and to consummate the Sale Transaction subject to the terms and conditions of the Stock Purchase Agreement. In no event shall any Management Plan Support Party directly or indirectly amend or terminate the Stock Purchase Agreement, cause the Stock Purchase Agreement to be amended or terminated, or take any action that will materially and adversely affect the rights of First Bank or the parties in interest in this Chapter 11 Case (each, an "Adverse Action") unless, after the Effective Date, (a) such Management Plan Support Party Files and serves on the Reorganized Debtor, First Bank, and all parties in interest in this Chapter 11 Case a notice of such intent to take an Adverse Action in the future and (b) no party in interest (other than the following parties in interest, an objection by whom will not impact the Management Plan Support Parties' ability to take an Adverse Action as set forth in this Article VI.D: the Debtor, any affiliate of the Debtor, the Plan Sponsor, the Holders of the Majority Interests, creditors that are treated as unimpaired under the Plan, creditors whose Claims or Interests are cancelled under the Plan, or other current or prior owners of Interests in the Debtor) files an objection to such Adverse Action within 10 business days of the Filing and service of such notice.  First Bank or any party in interest in the Chapter 11 Case may waive its rights under this Article IV.D.

On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor and (after consummation of the Sale Transaction) the Plan Sponsor may operate the Debtor's businesses and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Retained Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules; provided that any Claims against the Debtor as of the Effective Date shall be settled, compromised, withdrawn, or litigated to judgment as set forth in Article VII of the Plan.

Notwithstanding anything to the contrary in the organizational documents of the Debtor, the issuance of the Recapitalization Right to Purchase by the Holders of the Majority Interests is authorized without the need for any further corporate action or without any further action by the Holders of Claims or Interests.  The Recapitalization Right to Purchase issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable.

E.    *TruPS Amendments.*

On the Effective Date, the Trust Junior Subordinated Debentures, Capital Securities, Common Securities, and TruPS Indentures, and Trust Declarations shall be Reinstated as amended by the applicable TruPS Amendments, and any Trust created thereby shall continue to exist after the Effective Date as set forth in such Trust Declaration as it was in effect immediately prior to the Effective Date.  On and after the Effective Date, all defaults under any TruPS Documents arising on or prior to the Petition Date (including any default arising out of the commencement of the Chapter 11 Case) will be permanently and irrevocably waived.

The TruPS Amendments shall not be deemed to involve any offering, issuance or distribution of securities that would otherwise require registration under Section 5 of the Securities Act; provided, however, that in the event that the TruPS Amendments are deemed to involve the offering, issuance or distribution of securities, then (i) any such offering, issuance and/or distribution of securities shall be deemed to have been exempt from the registration requirements of Section 5 of the Securities Act pursuant to section 4(a)(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable, (ii) pursuant to section 4(a)(2) of the Securities Act, any securities offered, issued or distributed under the Plan pursuant to the TruPS Amendments will be exempt from, among other things, the registration requirements of section 5 of the Securities Act to the maximum extent permitted thereunder and any other applicable state or foreign securities laws requiring registration prior to the offering, issuance, distribution, or sale of securities and (iii) any securities offered, issued, or distributed under the Plan pursuant to the TruPS Amendments shall be deemed "restricted securities" that may not be offered, sold, exchanged, assigned, or otherwise transferred unless they are registered under the Securities Act, or an exemption from registration under the Securities Act is available, and in compliance with any applicable state or foreign securities laws.

F.     *TruPS Election.*

All Holders of TruPS Claims shall have made (or not made) the TruPS Election on their respective ballots on or before the Voting Deadline, and the making (or not making) of the TruPS Election shall be irrevocable.  If any Holder of TruPS Claims does not validly submit a ballot in accordance with the Disclosure Statement and related solicitation procedures, then such Holder shall be deemed irrevocably not to have made the TruPS Election.  If any Holder of TruPS Claims purports to make the TruPS Election on its respective ballot and does not pay its Pro Rata Portion of the Plan Funding TruPS Contribution into the Plan Funding Escrow within two (2) business days of the Debtor's demand, then it will not under any circumstance be or be deemed an Electing TruPS Holder under the Plan and will be forever barred from seeking to make or reinstate the TruPS Election (including by seeking any relief of the Bankruptcy Court or any other court to permit it to be or be deemed an Electing TruPS Holder).  The TruPS Election and any failure to make the TruPS Election shall be irrevocable by any Entity, including the Debtor and the applicable Holder of any TruPS Claim that makes or fails to make the TruPS Election.

G.     *Corporate Existence.*

Except as otherwise provided in the Plan, the Debtor shall continue to exist after the Effective Date as a corporation with all the powers of a corporation pursuant to the law of the State of Delaware and pursuant to the Debtor's certificate of incorporation and bylaws in effect prior to the Effective Date.

On the Effective Date (but not before the Effective Date), the Holders of the Majority Interests shall terminate the election for the Debtor to be taxed as an "S Corporation" in accordance with section 1362(d) of the Internal Revenue Code, and, on and after the Effective Date, the Reorganized Debtor shall maintain its tax status as a "C Corporation" under Chapter 1, Subchapter C of the Internal Revenue Code.  Notwithstanding the immediately preceding sentence, on the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtor may issue one or more shares of preferred stock in the Debtor to render the Debtor ineligible to be a "S Corporation"; provided that such issuance shall not materially affect the recoveries to and treatment of Claims and Interests under the Plan, and all such shares and stock shall bear a legend that same are fully subject to the terms and conditions of the Stock Purchase Agreement.

H.     *Vesting of Assets in the Reorganized Debtor.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

I.     *Cancellation of Securities and Agreements.*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtor under any Certificate, Trust Junior Subordinated Debenture, TruPS Indenture, TruPS Declaration, Equity Security, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor giving rise to any Claim or Interest (except such Certificates, Trust Junior Subordinated Debentures, Capital Securities, Common Securities, TruPS Indentures, TruPS Declaration, Equity Securities, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtor, if any, that are Reinstated pursuant to the Plan), shall be cancelled (solely as to the Debtor), and the Reorganized Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the Certificates, Trust Junior Subordinated Debentures, Capital Securities, Common Securities, TruPS Indentures, TruPS Declaration, Equity Securities, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtor (except such agreements, Certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtor that are specifically Reinstated pursuant to the Plan) shall be released and discharged; <u>provided</u> that notwithstanding Confirmation or Consummation, any such instrument that governs the rights of the Holder of a Claim or Interest shall continue in effect solely for purposes of allowing such Holders to receive distributions under the Plan from the Reorganized Debtor, as provided herein; <u>provided</u> further that the preceding proviso shall not affect the discharge of Claims or Interests pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtor.  Notwithstanding the foregoing, no executory contract or unexpired lease that has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code, shall be terminated or cancelled on the Effective Date.  Notwithstanding anything to the contrary in the Plan, the TruPS Documents, as amended by the TruPS Amendments, will remain in full force and effect after the Effective Date, <u>provided</u> that all claims for principal in excess of the revised principal amounts set forth in the governing documents of the Amended TruPS, interest or fees (solely to the extent all such claims and amounts arose from the TruPS Documents prior to the Petition Date) shall be released and discharged.

J.     *Corporate Action.*

Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including:  (1) selection of the directors and officers for the Reorganized Debtor; (2) the issuances of the Recapitalization Right to Purchase; (3) implementation of the Restructuring Transactions, including the Sale Transaction (subject to the terms and conditions of the Stock Purchase Agreement), the Electing TruPS Management Contribution, and the Electing TruPS Swap; and (4) any other actions necessary or appropriate to effect the transactions and contemplated under the Plan and other provisions of the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan involving any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors or officers of the Debtor or the Reorganized Debtor.  On or (as applicable) prior to the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor, including any and all other agreements, documents, securities, and instruments relating to the foregoing.  The authorizations and approvals contemplated by this Article IV.J shall be effective notwithstanding any requirements under non-bankruptcy law.  The issuance of any shares of stock and any other securities shall be exempt from the requirements of section 16(b) of the Exchange Act (pursuant to Rule 16b-3 promulgated thereunder) with respect to any acquisition of such securities by an officer or director (or a director deputized for purposes thereof) as of the Effective Date.

K.     *Directors, Managers, and Officers of the Reorganized Debtor.*

On and immediately after the Effective Date, the members of the board of directors of the Debtor shall be the same board of directors that existed as of the Effective Date.  Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor will disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the board of directors or be an officer of the Reorganized Debtor.  To the extent any such

KE 35583166

director or officer of the Reorganized Debtor is an "insider" under the Bankruptcy Code, the Debtor also will disclose the nature of any compensation to be paid to such director or officer. Each such director and officer shall serve from and after the Effective Date pursuant to the organizational documents of the Reorganized Debtor (which shall be consistent in all material respects with the organizational documents of the Debtor).

L.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtor and the officers and members of the board of directors thereof are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Restructuring Transactions in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.      *Cooperation Regarding Regulatory Matters.*

For so long at the Plan Support Agreement remains effective and has not been validly terminated, the Debtor will use commercially reasonable efforts to cooperate in good faith with the Plan Sponsor and the Electing TruPS Holders to take actions necessary or appropriate to address regulatory matters related to First Bank's recapitalization and ownership change.

N.      *Non-Payment of Certain Fees and Expenses.*

Notwithstanding anything to the contrary in the Plan, no fees or expenses payable to River Branch Capital LLC (pursuant to that certain engagement letter dated as of June 26, 2014, as may have been amended, modified, or supplemented, or otherwise) shall be paid as Accrued Professional Compensation Claims under the Plan, and, instead, any fees and expenses payable to River Branch Capital LLC (pursuant to that certain engagement letter dated as of June 26, 2014, as may have been amended, modified, or supplemented, or otherwise) shall be earned and payable only upon the recapitalization of First Bank in connection with the Sale Transaction or as otherwise agreed between the Reorganized Debtor and River Branch Capital LLC.

O.      *Section 1146 Exemption.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto or pursuant to the issuance of the Recapitalization Right to Purchase shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Such exemption specifically applies to (1) the creation of any mortgage, deed of trust, Lien, or other security interest; (2) the making or assignment of any lease or sublease; (3) any Restructuring Transaction; (4) the issuance, distribution, and/or sale of any of the Recapitalization Right to Purchase and any other securities of the Debtor or the Reorganized Debtor; or (5) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any bills of sale or assignments executed in connection with any Restructuring Transaction occurring under the Plan.

P.      *Employee and Retiree Benefits.*

There are no employment, retirement, indemnification, or other arrangements in effect on the Effective Date with the Debtor's non-insider officers or employees, or retirement income plans and welfare benefit plans for such Persons, or discretionary bonus plans or variable incentive plans regarding payment of a percentage of annual salary based on performance goals and financial targets for certain employees, and accordingly, no such agreements or arrangements will be assumed by the Reorganized Debtor or otherwise remain in effect after the Effective Date. Notwithstanding the foregoing, pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective

Date, any retiree benefits (as that term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law.

Q.      *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IV.Q hereof, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Reorganized Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtor or Reorganized Debtor, as applicable, will not pursue any and all available Causes of Action against it. The Debtor or Reorganized Debtor, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.** Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtor. The Reorganized Debtor, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

# ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts or Unexpired Leases not previously rejected (or the subject of a pending motion to reject) will be deemed assumed in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code. Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Each Executory Contract and Unexpired Lease so assumed shall revest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan. The Debtor will maintain and, to the extent applicable, assume its director's and officer's, general liability, and other insurance policies.

B.      *Cure of Defaults for Executory Contracts and Unexpired Leases Assumed.*

Any monetary defaults under each Executory Contract and Unexpired Lease not previously rejected (or the subject of a pending motion to reject) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the applicable Cure on the Effective Date or as soon as reasonably practicable thereafter or in the ordinary course of business, subject to the limitation described below.

Assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time prior to the effective date of

27

assumption.  Subject to the payment of the Cure Claims (and all other undisputed amounts falling due through the Effective Date), any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed or satisfied and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.

The Filing of the Plan shall constitute notice by the Debtor that the Cure for each Executory Contract and Unexpired Lease shall be zero unless otherwise noticed in a Plan Supplement or other subsequent notice.  To the extent any Entity party to an Executory Contract or Unexpired Lease disputes the foregoing Cure, such Entity must file an objection to the proposed Cure within 30 days after the Effective Date.  The Debtor shall then have until 120 days after the Effective Date to respond to such objection, and the related Cure Claim shall not become an Allowed, payable obligation of the Debtor until such dispute has been resolved by a Final Order.

C.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts and Unexpired Leases related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Any modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

D.      *Reservation of Rights.*

Nothing contained in the Plan, shall constitute an admission by the Debtor that any Executory Contract or Unexpired Lease is in fact an Executory Contract or Unexpired Lease or that any of the Reorganized Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtor or the Reorganized Debtor, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

E.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date or as soon as practicable thereafter (or if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as practicable thereafter), each Holder of an Allowed Claim or Allowed Interest shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests in the applicable Class.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VI.C.1 hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled

28

to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Distributions on Account of TruPS Claims*

With respect to distributions to be made on account of TruPS Claims, the Debtor's and Registrar's (as defined in the TruPS Indentures) records for transfer of the Trust Junior Subordinated Debentures shall be closed as of the close of business on the Distribution Record Date, and the Debtor, Reorganized Debtor, Registrar and each Indenture Trustee shall have no obligations to register or recognize any transfer of the Trust Junior Subordinated Debentures occurring after such date.  The Debtor, Registrar and Indenture Trustees shall be entitled to recognize and deal for all purposes of the Plan, including any distributions on account of the Trust Junior Subordinated Debentures, with only those holders of the Trust Junior Subordinated Debentures of record as of the Distribution Record Date.  All distributions on account of the Trust Junior Subordinated Debentures shall be made by the Debtor, or an agent as may be designated by the Debtor, directly to the holders of record as set forth in the Securities Register as of the Distribution Record Date, all in accordance with the terms of the TruPS Indentures and Trust Declarations.  Notwithstanding anything in this paragraph, no physical distribution of any Amended TruPS or any documents evidencing the TruPS Amendments shall occur, the TruPS Amendments shall be deemed effective as of the Effective Date by operation of law, and the TruPS Documents, as amended by the TruPS Amendments shall govern for all purposes after the Effective Date.  For the avoidance of doubt, after the Effective Date, payments of principal and interest pursuant to the Amended TruPS shall be made to holders in accordance with the terms of the TruPS Documents, as amended by the TruPS Amendments.  Notwithstanding anything contained herein to the contrary, following the Effective Date, the Trust Junior Subordinated Debentures and Capital Securities shall be freely transferable and the Debtor, the Reorganized Debtor, Registrar and each Indenture Trustee shall register or recognize any transfer of the Trust Junior Subordinated Debentures or Capital Securities occurring after the Distribution Record Date and shall keep a record of current registered holders.  The Debtor, the Reorganized Debtor, Registrar and each Indenture Trustee shall make all payments of principal and interest to such registered holders in accordance with the TruPS Documents, as amended by the TruPS Amendments.   Payments of interest made after the Effective Date, and pursuant to the Amended TruPS, shall be made starting on the first date that interest is payable and due after the Effective Date and in accordance with the terms of the Amended TruPS, and the first payment of interest will be interest accrued on the new, reduced principal amount from the Effective Date through the first date that interest is payable and due pursuant to the Amended TruPS.  Notwithstanding anything contained in this Plan to the contrary, any obligations of the Debtor set forth in this Plan with respect to the Amended TruPS shall continue as obligations of the Reorganized Debtor.

Outstanding fees and documented expenses not to exceed an aggregate amount of $25,000.00 for each Indenture Trustee, including its legal fees and expenses of counsel, will be paid by the Debtor in cash on the Effective Date, without the need for any of the Indenture Trustees to file an application with the Court for the payment of such fees and expenses.  Notwithstanding anything herein to the contrary, neither the Debtor nor the Reorganized Debtor will be required to pay any Indenture Trustee Fees in excess of the amounts set forth in this Article VI.B nor may amounts contained in the Plan Funding Escrow or the Professional Fee Escrow Account be used to pay any Indenture Trustee Fees in excess of the amounts set forth in this Article VI.B.

C.      *Distributions on Account of Claims Allowed After the Effective Date*

1.      Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date but which later become Allowed Claims shall be made on a quarterly basis (to the extent that material distributions exist to be made) and deemed to have been made on the Effective Date; <u>provided</u> that, for the avoidance of doubt, a Holder of any Disputed Administrative Claim or Disputed Priority Tax Claim that later becomes an Allowed Claim shall be entitled to interest on such Allowed Claim to the extent provided for by the Bankruptcy Code.

2. Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision to the contrary in the Plan, no partial payments and no partial distributions shall be made with respect to any Disputed Claim until the Disputed Claim has become an Allowed Claim in its entirety or has otherwise been resolved by settlement or Final Order.

D. *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1. Delivery of Distributions in General.

Except as otherwise provided herein, the Reorganized Debtor shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution; *provided, however*, that the manner of such distributions shall be determined at the discretion of the Reorganized Debtor.

2. Minimum Distributions.

Notwithstanding any other provision of the Plan, the Reorganized Debtor will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its holder is forever barred pursuant to Article VIII from asserting that Claims against the Reorganized Debtor or its property.

3. Undeliverable Distributions and Unclaimed Property.

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; <u>provided</u> that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date; <u>provided further</u> that the Debtor shall use commercially reasonable efforts to locate a Holder if any distribution is returned as undeliverable. After such date, all unclaimed property or interests in property shall revert to the Reorganized Debtor automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E. *Manner of Payment.*

All distributions under the Plan shall be made by the Reorganized Debtor. At the option of the Debtor, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F. *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Reorganized Debtor shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor reserves the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

KE 35583166

G.      *Allocations.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims against the Debtor, and no Holder of a Claim against the Debtor shall be entitled to interest accruing on or after the Petition Date on any such Claim.

I.      *Setoffs and Recoupment by Debtor.*

The Debtor may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtor may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claim it may have against the Holder of such Claim.

J.      *Claims Paid or Payable by Third Parties.*

1.      Claims Paid by Third Parties.

The Debtor or the Reorganized Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or a Reorganized Debtor; provided that the Debtor shall provide 21 days' notice to the Holder prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or a Reorganized Debtor on account of such Claim, such Holder shall, within two weeks of receipt thereof, repay or return the distribution to the Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Reorganized Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

2.      Claims Payable by Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; provided that the Debtor shall provide 21 days' notice to the Holder of prior to any disallowance of such Claim during which period the Holder may object to such disallowance, and if the parties cannot reach an agreed resolution, the matter shall be decided by the Bankruptcy Court.  Without limiting the foregoing, no distributions under the Plan shall be made on account of an Allowed Claim payable by any Affiliate of the Debtor.

3.      Applicability of Insurance Policies.

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Subject to Article VIII, nothing contained in the

Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtor or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT,
## UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Resolution of Disputed Claims.*

1.      Allowance of Claims.

Except as provided herein, on or after the Effective Date, the Reorganized Debtor shall have and shall retain any and all rights and defenses that the Debtor had with respect to any Claim, except with respect to any Claim Allowed as of the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including, without limitation, the Confirmation Order, in the Chapter 11 Case allowing such Claim.

2.      Prosecution of Objections to Claims.

Except as provided herein, the Reorganized Debtor after the Effective Date shall have the authority to File, settle, compromise, withdraw, or litigate to judgment objections to any and all Claims.  From and after the Effective Date, the Reorganized Debtor may settle or compromise any Disputed Claim without any further notice to or action, order or approval of the Bankruptcy Court.

3.      Claims Estimation.

Except as provided herein, prior to and on the Effective Date, the Debtor, and after the Effective Date, the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Claim that is contingent or unliquidated pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, regardless of whether the Debtor have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under sections 157 and 1334 of the Judicial Code to estimate any contingent Claim, or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent Claim, or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation, as determined by the Bankruptcy Court, on such Claim for all purposes under the Plan, including for purposes of distributions, and the Debtor or the Reorganized Debtor, as applicable, may elect to pursue additional objection to the ultimate distribution on account of such Claim. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor or the Reorganized Debtor, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on account of such Claim.  Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated.  All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.  Notwithstanding anything to the contrary in this paragraph, nothing in this paragraph shall derogate in any way the rights under applicable law, independent of this paragraph, of the Holder of a Disputed Claim with respect to estimation and allowance of, and allocation and holding of any reserves in respect of, the Disputed Claim.

KE 35583166

4.      Deadline to File Objections to Claims.

Unless a different time is set by an order of the Bankruptcy Court or otherwise established pursuant to the Plan, all objections to Claims and Interests must be Filed by the Claims Objection Deadline; provided that no such objection may be Filed with respect to any Claim or Interest after a Final Order has been entered Allowing such Claim or Interest.

B.      *Disallowance of Claims.*

Except as otherwise Allowed by the Plan, all Claims of any Entity from which property is sought by the Debtor under section 542, 543, 550, or 553 of the Bankruptcy Code or that the Debtor allege is a transferee of a transfer that is avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be disallowed if (1) the Entity, on the one hand, and the Debtor or the Reorganized Debtor, on the other hand, agree or the Bankruptcy Court has determined by Final Order that such Entity or transferee is liable to turnover any property or monies under any of the aforementioned sections of the Bankruptcy Code and (2) such Entity or transferee has failed to turnover such property by the date set forth in such agreement or Final Order.

**EXCEPT AS OTHERWISE AGREED BY THE DEBTOR AND UNLESS OTHERWISE ORDERED BY THE COURT, ANY AND ALL PROOFS OF CLAIM FILED AFTER THE APPLICABLE CLAIMS BAR DATE MAY BE DEEMED DISALLOWED AND EXPUNGED AS OF THE EFFECTIVE DATE WITHOUT ANY FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE BANKRUPTCY COURT, AND HOLDERS OF SUCH CLAIMS MAY NOT RECEIVE ANY DISTRIBUTIONS ON ACCOUNT OF SUCH CLAIMS, UNLESS SUCH LATE PROOF OF CLAIM IS DEEMED TIMELY FILED BY A FINAL ORDER OF THE BANKRUPTCY COURT.**

C.      *Amendments to Claims.*

On or after the Effective Date, a Claim may not be amended without the prior authorization of the Bankruptcy Court or the Reorganized Debtor.  Any such unauthorized new or amended Claim Filed shall be deemed disallowed and expunged without any further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests; Compromise and Settlement of Claims, Interests, and Controversies.*

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, compromise, settlement, discharge, and release, effective as of the Effective Date, of all debt (as such term is defined in section 101 of the Bankruptcy Code) that arose before the Effective Date, any debts of any kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code, and the rights and Interests of any Holders of Interests whether or not: (1) a Proof of Claim based on such debt or Interest is Filed; (2) a Claim or Interest based upon such debt is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such Claim or Interest has accepted the Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as provided for under section 1141(d)(6) of the Bankruptcy Code.

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any distribution to be made on account of such Allowed Claim or Interest.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and

33

Interests that is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the Reorganized Debtor may compromise and settle Claims against the Debtor and its Estate and Causes of Action, including solely with respect to the Reorganized Debtor, against other Entities.

**B.      Subordinated Claims.**

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights related thereto, whether arising under general principals of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Reorganized Debtor reserves the right to re-classify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

**C.      Releases by the Debtor.**

**Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, for the good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby confirmed, the Released Parties are deemed released and discharged by the Debtor and its Estate from any and all claims, interests, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, including any derivative claims, asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtor, its Estate, or Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any claim or interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, First Bank, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the business or contractual arrangements between the Debtor and any Released Party, the restructuring of claims and interests prior to or during the Chapter 11 Case, the Stock Purchase Agreement, the negotiation, formulation, or preparation of the Plan, the Disclosure Statement, the Plan Supplement, or any related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.**

**Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is:  (1) in exchange for the good and valuable consideration provided by the Released Parties; (2) a good faith settlement and compromise of the Claims released by this Article VIII.C; (3) in the best interests of the Debtor and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to the Debtor asserting any claim or Cause of Action released pursuant to the Debtor Release.**

**D.      Releases by Holders of Claims and Interests.**

**Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged the Third Party Releasees from any and all Claims, Interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative Claims asserted on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or**

34

otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or in any way relating to, or in any manner arising from, in whole or in part, the Debtor, First Bank, the Debtor's restructuring, the Chapter 11 Case, the purchase, sale, or rescission of the purchase or sale of any Security of the Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Case, the negotiation, formulation, or preparation of the Plan, the Stock Purchase Agreement, the related Disclosure Statement, the related Plan Supplement, or related agreements, instruments, or other documents, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence. Notwithstanding anything to the contrary in the foregoing, the release set forth above does not release any obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Third Party Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Third Party Release is: (1) in exchange for the good and valuable consideration provided by the Third Party Releasees; (2) a good faith settlement and compromise of the Claims released by this Article VIII.D; (3) in the best interests of the Debtor, its Estate, and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any Entity granting a Third Party Release from asserting any claim or Cause of Action released pursuant to the Third Party Release.

E.     **Exculpation.**

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, none of the Exculpated Parties shall have or incur any liability for any claim, cause of action, or other assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Chapter 11 Case, the Stock Purchase Agreement, the negotiation, formulation, or preparation of the Plan or any contract, instrument, document, or other agreement entered into pursuant thereto, or any distributions made pursuant to or in accordance with the Plan; provided that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted actual fraud, willful misconduct, or gross negligence.

F.     **Injunction.**

Notwithstanding anything contained herein to the contrary, on the Confirmation Date and effective as of the Effective Date and to the fullest extent authorized by applicable law, all Entities who have held, hold, or may hold Claims or Interests that have been released pursuant to the Plan, compromised and settled pursuant to the Plan, or are exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor, First Bank, the Reorganized Debtor, the Released Parties, or the Exculpated Parties, or their respective property (collectively, the "**Enjoined Actions**"):  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claim or Interest; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the Estate of such Entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such entities on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests unless such entity has timely filed a Proof of Claim with the

Bankruptcy Court preserving such right of setoff, subrogation, or recoupment; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such released, compromised, settled, or exculpated Claims or Interests.  Any Entity receiving a distribution under the Plan on account of any Claim shall be deemed to have waived any right to such Claim as against any third party and shall be enjoined from pursuing such Claim as against any Entity other than the Debtor's Estate; provided that the foregoing injunction does not enjoin any actions against any Released Party to enforce obligations arising on or after the Effective Date of any party under the Plan or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

G.      *Waiver of Statutory Limitations on Releases.*

Each Releasing Party in each of the releases contained in the Plan (including under Article VIII of the Plan) expressly acknowledges that although ordinarily a general release may not extend to claims which the Releasing Parties do not know or suspect to exist in his favor, which if known by it may have materially affected its settlement with the party released, each of the Releasing Parties has carefully considered and taken into account in determining to enter into the above releases the possible existence of such unknown losses or claims.  Without limiting the generality of the foregoing, each of the Releasing Parties expressly waives any and all rights conferred upon it by any statute or rule of law which provides that a release does not extend to claims which the claimant does not know or suspect to exist in its favor at the time of executing the release, which if known by it may have materially affected its settlement with the released party, including the provisions of California Civil Code Section 1542.  The releases contained in Article VIII of the Plan are effective regardless of whether those released matters are presently known, unknown, suspected or unsuspected, foreseen or unforeseen.

H.      *Setoffs.*

Except as otherwise provided herein, the Debtor, First Bank, and the Reorganized Debtor, as applicable pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable nonbankruptcy law, or as may be agreed to by the Holder of a Claim or Interest, may set off against any Allowed Claim or Interest (which setoff shall be made against the Allowed Claim or Interest, not against any distributions to be made under the Plan with respect to such Allowed Claim or Interest), any Claims, rights, and Causes of Action of any nature that any Debtor may hold against the Holder of such Allowed Claim or Interest, to the extent such Claims, rights, or Causes of Action against such Holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise), and any distribution to which a Holder is entitled under the Plan shall be made on account of the Claim or Interest, as reduced after application of the setoff described above.  In no event shall any Holder of any Claim or Interest be entitled to set off any Claim or Interest against any Claim, right, or Cause of Action of the Debtor unless such Holder obtains entry of a Final Order entered by the Bankruptcy Court authorizing such setoff or unless such setoff is otherwise agreed to in writing by the Debtor, First Bank, or the Reorganized Debtor, as applicable, and a Holder of a Claim or Interest; provided that, where there is no written agreement between the Debtor, First Bank, or the Reorganized Debtor, as applicable and a Holder of a Claim authorizing such setoff nothing herein shall prejudice or be deemed to have prejudiced the rights of the Debtor, First Bank, or the Reorganized Debtor to assert that any Holder's setoff rights were required to have been asserted by motion to the Bankruptcy Court prior to the Effective Date.

I.      *Special Provision Governing Accrued Professional Compensation Claims and Final Fee Applications.*

For the avoidance of doubt, the releases in Article VIII of the Plan shall not waive, affect, limit, restrict, or otherwise modify the right of any party in interest to object to any Accrued Professional Compensation Claim or final fee application filed by any Professional in the Chapter 11 Case.

J.      *Protections Against Discriminatory Treatment.*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, no Entities, including Governmental Units, shall discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to,

discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor have been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case but before the Debtor are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Case.

K.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtor may maintain documents in accordance with their current document retention policy, as may be altered, amended, modified, or supplemented by the Reorganized Debtor.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition precedent to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX.B hereof:

1.      the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information in form and substance reasonably acceptable to the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders;

2.      the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders, and the Confirmation Order shall have become a Final Order;

3.      the Plan Support Agreement has not been validly terminated pursuant to its terms;

4.      the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance acceptable to the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders;

5.      the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders shall have agreed in writing that Section 14 of the Plan Support Agreement has been satisfied;

6.      the Professional Fee Escrow Account shall have been established and funded in Cash in accordance with Article II.B of the Plan;

7.      the conditions to the Effective Date set forth in this Article IX.A shall have been satisfied or waived on or before August 13, 2015;

8.      all actions, documents, Certificates, and agreements necessary to implement the Plan, including documents contained in the Plan Supplement, shall have been effected or executed and delivered, as the case may be, to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws; provided that each document, instrument, and agreement must be acceptable to the Debtor and the Electing TruPS Holders holding a majority of all TruPS Claims held by all Electing TruPS Holders; and

9.      any and all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan shall have been received.

B.  *Waiver of Conditions.*

The conditions to Confirmation and Consummation set forth in this Article IX may be waived only by the Debtor, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.  *Effect of Failure of Conditions.*

If Consummation does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any claims by the Debtor, any Holders of Claims or Interests, or any other Entity; (2) prejudice in any manner the rights of the Debtor, any Holders of Claims or Interests, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders of Claims or Interests, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.  *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtor reserves the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtor expressly reserves its right to revoke, withdraw, alter, amend, or modify the Plan, one or more times, after Confirmation, and, to the extent necessary may initiate proceedings in the Bankruptcy Court to alter, amend, modify, or supplement the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such alteration, amendment, modification, or supplement shall be considered a modification of the Plan and shall be made in accordance with this Article X.  Notwithstanding the foregoing, no material modification in the treatment of any Class of Claims shall occur that seeks to treat Holders of Claims in such Class in a manner less favorable than the treatment being accorded to such Holders in the current version of the Plan without providing the Holders of such Claims with the required disclosures and affording such Holders the opportunity to vote on the proposed modification of the Plan.

B.  *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.  *Revocation or Withdrawal of Plan.*

The Debtor reserve the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization.  If the Debtor revokes or withdraws the Plan, or if Confirmation or Consummation does not occur, then:  (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected under the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor or any other Entity, including the Holders of Claims or First Bank; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor or any other Entity, including First Bank.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Case and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.  allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including (a) the resolution of any request for payment of any Administrative Claim, and (b) the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.  decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.  resolve any matters related to:  (a) the assumption or assumption and assignment of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.  ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.  adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.  adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.  enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Disclosure Statement;

8.  enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.  resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.  issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article VIII hereof and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.  resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VI.J.1 hereof;

39

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

15. enter an order or Final Decree concluding or closing the Chapter 11 Case;

16. adjudicate any and all disputes arising from or relating to distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

21. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions and releases granted in the Plan, including under Article VIII hereof;

22. enforce all orders previously entered by the Bankruptcy Court; and

23. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

A. *Immediate Binding Effect.*

Subject to Article IX.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.

B. *Additional Documents.*

On or before the Effective Date, the Debtor may enter into any such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor or the Reorganized Debtor, as applicable, and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Dissolution of Creditors' Committee and Cessation of Fee and Expense Payment.*

On the Effective Date, the Creditors' Committee (if any) shall be dissolved.  As of the Effective Date, the Reorganized Debtor shall no longer be responsible for paying any fees or expenses incurred after the Effective Date by the Creditors' Committee.

D.      *Certain Governmental Matters.*

With respect to any Claim under or to enforce the Internal Revenue Code (26 U.S.C.) or any federal banking law and regulation, the discharge under Article VIII.A of the Plan is governed exclusively by section 1141 of the Bankruptcy Code, and the scope of the discharge under Article VIII.A of the Plan shall not exceed the scope allowed under that section.  The term "Releasing Party" shall not mean or include the United States of America with respect to any Claim arising under or to enforce the Internal Revenue Code by the Internal Revenue Service or any Claim arising under or to enforce any federal banking law and regulation by any federal banking regulator on behalf of the United States of America.  No offset rights or recoupment rights of the United States of America shall be impaired or affected in any way by the Plan or the Confirmation Order.

Nothing in the Plan or the Confirmation Order authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements under applicable banking laws and regulations.

E.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur, and none of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests prior to the Effective Date.

F.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.      *Notices.*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

            Northwest Bancorporation of Illinois, Inc.
            300 East Northwest Highway
            Palatine, Illinois  60067
            Facsimile:  (847) 705-3903
            Attention:  Alan Reasoner

            with a copy to:

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Facsimile:  (312) 862-2200
Attention:  Edwin S. del Hierro, P.C.;
            David R. Seligman, P.C.; and
            Brad Weiland

After the Effective Date, the Debtor has authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

H.      Term of Injunctions or Stays.

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

I.      Entire Agreement.

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      Exhibits.

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's CM/ECF website at www.deb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

K.      Nonseverability of Plan Provisions.

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's consent; and (3) nonseverable and mutually dependent.

L.      Votes Solicited in Good Faith.

Upon entry of the Confirmation Order, the Debtor will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtor and its respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance

with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan, and, therefore, neither any of such parties or individuals or the Reorganized Debtor will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan and any previous plan.

M.      *Closing of Chapter 11 Case.*

The Reorganized Debtor shall, promptly after the full administration of the Chapter 11 Case, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case.

N.      *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of the Disclosure Statement, the Plan Supplement, or any other order (other than the Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control.

Dated:  May 19, 2015

Respectfully submitted,

Northwest Bancorporation of Illinois, Inc.

By: _____

    Name:    Alan Reasoner
    Title:    President

KE 35583166